**Sylvia SANTOS, Plaintiff**

**v.**

**GE CAPITAL, Defendant.**

**No. CIV.A. 3:04CV1472CFD.**

United States District Court,
D. Connecticut.

Oct. 11, 2005.

Sylvia Santos, Bronx, NY, Pro se.

Lawrence Peikes, Esq., Wiggin & Dana, Stamford, CT, for Defendant.

*RULING ON DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ALTERNATIVE DISPUTE RESOLUTION*

DRONEY, District Judge.

Plaintiff Sylvia Santos brings this action *pro se* against her former employer, GE Capital.[1] Santos alleges that GE unlawfully harassed her and issued her an unfavorable performance evaluation on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e *et seq.* Santos further alleges that GE denied her a disability-related reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* She seeks backpay, reinstatement to her position, and monetary damages in excess of $600,000.

The defendant argues that Santos' employment agreement with GE requires her to arbitrate such claims through GE's alternative dispute resolution process. GE has moved for an order of this Court under the Federal Arbitration Act ("FAA" or "Act"), 9 U.S.C. § 1 *et seq.*, dismissing Santos' complaint and compelling her to pursue alternative dispute resolution.

## I. Background[2]

Sylvia Santos is an African–American female. She began working for GE Capital as a temporary employee in February 2002, and was hired as a permanent employee in the Corporate Treasury Department on May 28, 2002. While still a temporary employee, Santos suffered some kind of workplace accident (the details of which she does not disclose) that required emergency treatment. She alleges that even after her treatment, she continued to suffer severe pain and inflammation which affected her ability to work. Santos informed her manager of her ongoing medical problems, but says that GE denied her any remedial accommodations and instead reprimanded and humiliated her for working slowly. In November 2002, Santos alleges that her manager inexplicably shortened her lunch break while other non-African-American female colleagues continued to enjoy a full hour break.

In late December 2002, Santos complained to GE's human resources manager that she was subject to a hostile work environment and that GE continued to offer her no accommodations for her deteriorating medical condition, recently diagnosed as rheumatoid arthritis. Santos claims that GE responded by telling her that complaints had been filed about her work performance and that she would be terminated if she did not improve. Santos alleges that throughout 2003, she continued to be subject to unfavorable and unfair work evaluations, that her requests for medical leave to attend doctor's appointments were treated with skepticism and reluctance, that her employment status was downgraded and her compensation decreased, and that her need for disability accommodations was summarily ignored. In contrast, Santos alleges that a non-African-American colleague with rheumatoid arthritis was accepted and accommodated by GE.

---

1. The defendant claims that GE Capital improperly was named in this action, as it is merely a subsidiary unit of the General Electric Company, the proper defendant. The defendant has not moved to recaption the case, nor does this distinction have any ultimate effect on the Court's ruling. The Court will refer to the defendant simply as "GE" throughout this opinion, but will in places distinguish GE Capital from the larger General Electric Company when necessary to its ruling.

2. These facts are taken from the plaintiff's complaint. They are undisputed unless otherwise indicated.

On November 12, 2003, Santos took a disability leave of indeterminate length from GE.[3] She claims that in April 2004, GE began to challenge her ongoing certification of disability and to suspend her benefits. The next month, GE called Santos and informed her that they would be posting her position for hiring. In June 2004, GE shipped personal effects from Santos' office to her home. She believes that this chain of events indicates that GE has terminated her.

Santos has filed a complaint with the Equal Employment Opportunities Commission ("EEOC"), who conducted a one-day mediation between Santos and GE on April 7, 2004. That mediation was unsuccessful. The EEOC issued Santos a right-to-sue letter on June 15, 2004.

## II. Standard of Review

 When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984);. *Frasier v. General Elec. Co.,*

930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). Thus, a motion to dismiss under 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (citations and internal quotations omitted), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). In its review of a 12(b)(6) motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

 When a motion to dismiss is premised upon a request to compel arbitration, however, the Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003) (citations omitted); *see also Stamford Holding Co. v. Clark,* 2003 WL 1597206, *7–8, 2003 U.S. Dist. LEXIS 4542, *24–25 (D.Conn. Mar. 25, 2003). In the instant case, both parties have had the opportunity to develop a factual record sufficient to resolve the issue of arbitrability.[4] Therefore, the Court will apply the "genuine dispute of material fact standard," as it would in a motion for summary judgment.[5]

---

**3.** It appears from Santos' complaint that she never returned to work after that date, though she states that her condition subsequently has improved to some degree.

**4.** That conclusion stands even if applying the more generous motion to dismiss standard, as

the necessary record consists solely of matters attached as exhibits or incorporated by reference in the pleadings.

**5.** The Court notes that the defendant did not provide the *pro se* plaintiff with the notice that would have been required under Local R. Civ.

### III. Discussion

Defendant GE argues that as part of her permanent employment contract, Santos explicitly agreed to pursue any claims arising from her employment through the GE alternative dispute resolution process, which the company calls RESOLVE. GE claims that under the Federal Arbitration Act, it is entitled to the dismissal of this litigation and an order compelling Santos to follow the RESOLVE process.

■ The Federal Arbitration Act codifies a federal policy favoring arbitration as an alternative to litigation. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 488, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Furthermore, the Act's coverage provision, 9 U.S.C. § 2, provides that courts must construe a written agreement to arbitrate as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*

The Supreme Court repeatedly has enforced the FAA and otherwise upheld the arbitration of statutory rights when an individual previously has agreed to arbitration. *See, e.g., Circuit City Stores v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (holding that respondent's employment application, which included clause mandating binding arbitration of all federal statutory claims, constituted an enforceable agreement under the Federal Arbitration Act); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that arbitration provision in mobile home financing agreement was enforceable as to respondent's Truth in Lending Act claim, despite fact that provision was silent as to how parties would

shoulder costs of arbitration); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (affirming that a claim under the Age Discrimination in Employment Act could be subject to compulsory arbitration when affected employee signed a securities registration form containing an arbitration agreement).

■ In determining whether the arbitration of a particular statutory claim is permissible, the Supreme Court has established a two-prong test. *See Green Tree*, 531 U.S. at 90, 121 S.Ct. 513. First is whether the parties agreed to submit their claims to arbitration. *Id.* If such an agreement is present, then an examination of the statutory text is necessary. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

■ The Court finds that a valid agreement to arbitrate exists between Santos and GE. On May 22, 2002 (six days prior to the commencement of her permanent employment), Santos signed a document entitled "Acknowledgment [of] Conditions of Employment." See Doc. # 9 at Exh. A. That acknowledgement clearly stated that "your offer of employment is contingent upon your acceptance of the conditions of employment described below." Paragraph 5 of the acknowledgment reads:

> I acknowledge that I have received and reviewed a copy of the "RESOLVE Program Handbook." I agree to resolve disputes in accordance with the terms of

P. 56(b) if this actually had been a motion for summary judgment. Nonetheless, the Court finds that Santos has received sufficient notice of defendant's motion, as evidenced by

the fact that she has filed several reply memoranda opposing the motion. *See Docs.* # 10, 14, 16.

the "RESOLVE Guidelines" for Employees of GE Capital and its subsidiaries. THUS, I AGREE AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS (AS DEFINED IN THE GLOSSARY IN THE RESOLVE GUIDELINES AND HANDBOOK) IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL, BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS.

*Id.* (emphasis original).

Santos signed at the bottom of the acknowledgement form, beneath the statement "I accept the conditions of employment described above."

The RESOLVE program handbook defines covered claims as including allegations "employment discrimination and harassment, based on … race, sex, …. handicap/disability, or other characteristic protected by law." *See* Doc. # 9, Exh. B at 22. Santos acknowledges receiving a copy of the RESOLVE handbook and guidelines, and per her employment agreement, the Court finds that she was on notice that Title VII and ADA claims would be subject to binding arbitration through RESOLVE.[6]

Despite this notice, Santos argues that her arbitration agreement is invalid for two reasons: first, that she signed it as an employee of GE Capital and that is not enforceable by GE Corporation; and second, that GE has waived its rights to proceed with arbitration because it participated in the EEOC mediation on April 7, 2004.

Although the Corporate Treasury division in which Santos worked initially was a subsidiary of GE Capital and now is within the GE Corporate subsidiary of the General Electric Company, this change in the General Electric corporate structure does not render Santos' arbitration agreement ineffective. Nothing in the agreement limits her to arbitration only with GE Capital. The acknowledgement form indicates that Santos was to be part of the larger General Electric workforce, as her employment was with the "Company," she was potentially eligible for benefits from the "GE Relocation Program," and she also received a general "guide to GE policies, 'Integrity: The Spirit & Letter of Our Commitment.'" Doc. # 9 at Exh. A. Further, although the RESOLVE guidelines were described as "for Employees of GE Capital and its subsidiaries," Santos waived the right to pursue *any* covered claims arising from her employment in court. The waiver simply does not state or suggest that the enforcement of its provisions was confined to a particular division of the General Electric Company. Furthermore, the Second Circuit has "repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to 'ordinary principles of contract and agency.'" *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 97 (2d Cir.1999) (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980)). Federal courts also abide by the principle that in construing an arbitration agreement, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability" and

---

**6.** Santos claims that she received a different version of the RESOLVE handbook than that submitted to the Court by GE. See Doc. # 10, Exh. B. Santos' proffered version (which appears substantively identical to the defen-

dant's) also defines employment discrimination claims of any kind as within the purview of RESOLVE. *Id.* at 9. In addition, Santos admits that her claims are covered by RESOLVE. *See, e.g.,* Doc. # 10 at ¶¶ 6, 9.

that ambiguities as to the scope of the arbitration clause are themselves resolved in favor of arbitration. *Mitsubishi Motors*, 473 U.S. at 626, 105 S.Ct. 3346. The Court concludes that the parties here agreed to arbitrate all disputes within the ambit of Santos' employment with the General Electric Company, regardless of the corporate location of her position.[7]

▮▮▮ The Court also does not find that GE's participation in the EEOC arbitration constitutes a waiver of its desire to arbitrate. The Second Circuit has held that waiver of the right to arbitration "is not to be lightly inferred" and generally has found a waiver to exist where the parties have "substantially ... protracted involvement in litigation." *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968); *Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 58 (2d Cir.2001). The Court does not find that participation in a one-day mediation conducted by the EEOC meets this standard. As the First Circuit has recently held, "[an] employer's failure to initiate arbitration during the pendency of [EEOC] proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 16 (1st Cir.2005).

The Court concludes that Santos and GE have a valid agreement to arbitrate and one which extends to the Title VII and ADA claims raised by Santos in this suit.

▮▮ The final prong of the *Green Tree* test requires the Court to examine the statutes in order to determine whether Congress intended to preclude a waiver of judicial remedies for such actions. No such preclusive intent exists. The Second Circuit explicitly has held that Title VII claims may be the subject of compulsory arbitration. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004). As for the ADA, the text of the statute states that "[w]here appropriate and to the extent authorized by law, the use of alternative dispute resolution, including ... arbitration, is encouraged to resolve disputes." 42 U.S.C. § 12212; *see also Topf v. Warnaco, Inc.*, 942 F.Supp. 762, 771 (D.Conn.1996) (holding ADA claims arbitrable).

## IV. Conclusion

For the above reasons, the Courts finds that the plaintiff's claims are properly the subject of arbitration. The defendant's Motion to Compel [Doc. # 7] is GRANTED and the plaintiff is ORDERED to pursue her claims through the alternative dispute resolution process provided by her employer. Because the parties previously have agreed to binding arbitration, the defendant's Motion to Dismiss [Doc. # 7] also is GRANTED. The Clerk is ordered to dismiss this case.

---

7. GE argues, and Santos does not deny, that the change in corporate structure itself did not alter the nature of her job. GE also points out, and Santos does not refute, that all of its employees (no matter their division) are covered by RESOLVE. Santos neither has lost nor gained any different rights by working under GE Corporate instead of GE Capital, and has been an employee of General Electric Company throughout.